## THE MUTUAL FIRE INSURANCE COMPANY OF MONTGOMERY COUNTY *vs.* ALLEN FARQUHAR.

*Corporations—Amendment of By-Law—Charter Provisions as to Adoption of By-Laws—Usage of Corporation Repugnant to Charter.*

The charter of a mutual fire insurance company provided that the by-laws could be amended only at a general meeting of the members convened in pursuance of public notice given as in cases of an election for direetors; also that the president, upon the request of twenty members, should call a general meeting by giving notice, as in cases of the election of directors, for the transaction of such business as should be specified in the notice. The charter also provided that directors should be elected on the first Mondays in January after two weeks notice by advertisement in newspapers published in two counties. At a general meeting of the company held in January, 1895, for the election of directors, a by-law was amended, but no notice had been given that the amendment would be proposed at that meeting. *Held,*

1st. That although the January meetings of the company were general meetings at which many kinds of business could be transacted in pursuance of a custom, yet, under the terms of the charter, the by-laws could not be amended unless previous notice of the amendment had been given, and that the by-law adopted without such notice was invalid.

2nd. That the resolution by which the amended by-law was adopted was not binding on the directors as an expression of the will of the members, because it was not adopted in accordance with the require-ments of the charter.

A long-continued usage or custom of a corporation not repugnant to its charter is valid, but such usage cannot be sustained if in conflict with the charter.

Appeal from the Circuit Court for Montgomery County (LYNCH and HENDERSON, JJ.) The trial Court ruled that there was no evidence in the case legally sufficient to en-title the plaintiff to recover. This was an action of assumpsit instituted by the appellant, company, against its treasurer, to recover from him an amount of money paid by him to

the directors of the company for mileage, in excess of the amount limited for that purpose by an alleged by-law adopted at a meeting of the members of the company, held on January 7th, 1895. Under the 6th section of its charter a meeting of the members was convened and held on January 7th, 1895, for the election of thirteen directors for the ensuing year. At this meeting several by-laws were enacted, one of which limited the amount to be paid to the directors and executive committee for attending meetings for mileage, an amount not to exceed five cents per mile one way. At a meeting of the directors held January 23rd, 1895, a resolution was adopted declaring all of the by-laws adopted at the meeting of January 7th inoperative, null and void. On the 16th day of May, 1895, the directors met and passed a resolution providing for the payment to the directors, in 1895, the same rate of mileage as had theretofore been paid them, which had been since 1863, ten cents a mile each way. This action is brought to recover from the treasurer the amount paid out by him in the year 1895, to the directors, under the last mentioned resolution, in excess of the amount limited by the by-law referred to.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, PAGE and BOYD, JJ.

*Henry E. Davis* and *Charles W. Prettyman* (with whom was *Hattersly W. Talbott* on the brief), for the appellant.

*Thomas Anderson* and *Edward C. Peter* (with whom was *W. Viers Bouic, Jr.*, on the brief), for the appellee.

PAGE, J., delivered the opinion of the Court.

This suit was brought by the Mutual Fire Insurance Company of Montgomery County, a corporation created by chapter 118 of the Acts of 1847 of the Legislature of Maryland, against the appellee, who is the treasurer of the company.

At a meeting of the members of the company held in

January, 1895, the following amendment was passed by a vote of 98 to 4 : " By-law. Two-thirds of the members present concurring, that after the date of this meeting, Jan. 7th, 1895, the mileage paid the directors and executive committee for attending meetings, shall not exceed five cents per mile, one way."

The only question presented by this appeal, is whether this resolution is binding upon the directors of the company. It may be considered in two aspects : First, regarded as a by-law was it properly passed ; and second, if not, is it obligatory upon the directors, as an expression of the will of the members ?

If it be taken as an amendment of the by-laws, by the addition of a new one, the question will involve the construction proper to be given to the 6th, 7th and 8th sections of the charter. These sections are as follows : Sec. 6. " That it shall be the duty of the president or secretary of the said company annually to give notice of at least two weeks, by advertisement in some newspaper published in Montgomery County, and in Howard District of Anne Arundel County, or by notice posted at such public places as he may deem proper, of the election, which shall be held on the first Monday in January, in each and every year, for thirteen directors of the company, who shall be members thereof; but, &c.,    *    *    *.    At all such elections each member shall have one vote, and may vote either in person or by proxy."

" Sec. 7. That the constitution and by-laws of the said company shall only be made by the concurrent vote of at least two-thirds of the whole board of directors exclusive of the president ; and any amendment or alteration of the constitution and by-laws shall only be made by a general meeting of members of the company, convened in pursuance of public notice, given as in cases of election for directors, when each member present shall have one vote ; and two-thirds of the vote thus given shall decide ; and any amendment or alteration of the constitution or by-laws, that may

be thus made, shall be binding on all the members of the company."

" Sec. 8. That it shall be the duty of the president, whenever required in writing by not less than twenty members of the company, other than the directors, to call a general meeting of the members, by giving notice as in cases of election for directors for the transaction of such business as may be specified in the said written requisition ; and any resolutions or proceedings passed or had at such meetings by not less than two-thirds of the members who shall be present, shall be binding on the president and directors and members of the company "

The law of the corporation, relating to its power of amendment or alteration of the by-laws, is to be found in the second clause of the seventh section ; and all by-laws, customs or usages repugnant thereto cannot be sustained. *Miller* v. *Eschbach*, 43 Md. 7. From the bare reading of this clause it is obvious, first, that the power to change the by-laws belongs to the members of the company ; second, that such power can be exercised only at " a general meeting of the members," and third, that such "general meeting " must be convened in pursuance of public notice given as in cases of elections for directors. The words " general meetings " are sometimes employed to describe those meetings at which any business of the corporation may be transacted, subject to such restrictions as the charter may impose. They differ from special meetings, in that the latter are called for particular purposes and nothing can be done beyond the specified objects.

This does not seem to be the sense in which the words are employed in this charter, but rather in the sense of meetings at which all the members are expected to attend. This is apparent from the provisions of sec. 8, where it is made the duty of the president, on the request in writing of not less than twenty members (other than directors) to call " a general meeting of the members," by giving notice as in cases of election "for directors, for the transaction of such

business as may be specified in the said written requisition."
However that may be, the charter provides for only two
meetings : One in January, by the sixth section ; the other
designated a " general meeting " on the call of the presi-
dent at the request of not less than twenty members, under
the provisions of the eighth section.    It is contended the
January meeting being called for the special purpose of
electing the directors, cannot be regarded as a general meet-
ing, and that therefore no other business can then be trans-
acted.    But it is certainly general in the sense that all the
members must be notified and are expected to attend ; and
there are no inhibitions contained in the charter preventing
it from transacting other business.    There is nothing in sec-
tion six, or in the notice required by it, that restricts the
meeting from transacting any of the business of the com-
pany.    The notice provided for by that section is that the
election for directors will be held on the first Monday in
January, and a by-law making that meeting an occasion for
general business, would contain nothing inconsistent with
its terms.    It would be entirely within the power of the
members to pass such a by-law.  The proof shows, we think,
that the unbroken custom or usage of the corporation for
many years has been to regard the January meeting as an
occasion when any of the business of the corporation could
be transacted.

From the year 1877 at least, up to to the very last meet-
ing of the members in 1896, the subjects that came before
the January meetings covered a very wide range.    Annual
reports were read and approved, regulations as to steam
threshers were passed, rates of insurance were fixed, re-
wards to persons for services at fires were voted, a com-
mittee to procure legislation was appointed, receivers of
interest for the company were directed to give bond—these
are some of the matters that occupied its attention and upon
which it decisively acted.    Under these circumstances, it
cannot be doubted, that all the members understood and
must be regarded as having agreed that at these meetings,

not only were the directors to be elected, but that any other matter in which the company was concerned, could be taken up, considered and definitely passed upon.   A custom or usage so long continued and so invariably pursued has the force of a by-law, and not being repugnant to any of the provisions of the charter, is valid.   *Miller* v. *Eschbach, supra* ; *Sampson* v. *Bowdoinham, Corp.*, 36 Me. 78 ; *At. F. Ins. Co.* v. *Sanders*, 36 N. H. 252 ; *State* v. *Conklin*, 34 Wis. 21 ; *Warner* v. *Mower*, 11 Vt. 385.

But while the January meeting, by reason of the usage, is a general meeting for the transaction of general business, it does not follow therefrom that alterations to the by-laws can then be made, unless the further provisions of section 7 have been observed.   Neither a by-law nor a usage having the force of a by-law, can be supported if repugnant to any provision of the charter.   1 *Thompson on Corp.* sec. 943. For the members to legally amend the by-laws, there must be a general meeting, " convened in pursuance of public notice, given as in cases of election for directors."   That is, there must be a previous notice of the same general character as that required for a meeting in January to elect directors.   Such notice by the sixth section must be at least two weeks by advertisement in some newspaper in Montgomery County and Howard District of Anne Arundel County, or posted at such public places as the president or secretary should deem proper, must inform the members that an election will be held at the meeting on the first Monday in January.   So that the notice of a meeting to change the by-laws, must be advertised in the newspapers severally published in the two counties and must inform the members at least two weeks before the meeting, that the business of altering or amending the by-laws would then be brought up and considered.   The case of *Warner* v. *Mower*, 11 Vt. 385, was relied upon by the counsel for the appellant as supporting his contention.   That case only decided that " common custom of a country is of great force in the construction of statutes as well as contracts," and that when

the time and place of the meeting is fixed and " there is no restriction in regard to business, any and all business pertaining to the interest and power of the corporation may be transacted." But the question in the case at bar is, does not the charter of this company restrict all meetings not convened in pursuance to the seventh section, that is, after notice of the required character, in such a manner as to prevent any alterations of the by-laws thereat. In *Warner* v. *Mower*, the Court says, " it is undoubtedly competent for the corporation to restrict the business to be done," and it might have added that the corporation itself has no power except such as the Legislature has bestowed upon it. The charter is the measure of its powers and privileges, and where the mode of exercising any of its functions is therein prescribed, it must be strictly pursued. *Kent* v. *Quicksilver M. Co.*, 78 N. Y. 182 ; *Com.* v. *Lancaster*, 5 Watts, 152 ; 5 *Am. & Eng. Enc. of Law*, page 90 (2d ed.) ; 1 *Thompson on Corp.* sec. 939.

We are of opinion, therefore, that the by-law was not properly passed and cannot be maintained as a law of the corporation.

The other branch of the question is, can the resolution be held to bind the directors as an expression of the will of the members ? It is true, directors are trustees and agents of the bodies represented by them, and as such are held " to be within the rule which guards and restrains the dealings and transactions between the trustee and *cestui que trust*, and agent and principal." This was so held in *Parish's case*, 42 Md. 598, and many other cases. But their authority is not delegated by the body, but is derived from the provisions of the charter and the by-laws. For the members to control them in the exercise of that authority, if the charter contains provisions directing a particular mode, their will must be expressed in a manner that conforms to that mode. In the case at bar the members undertook to pass a by-law, establishing the rates of mileage to be paid directors and the executive committee. It regulates the rights of certain offi-

cers of the corporation, as against the corporation itself. It affected only those who were members of the body, and created a rule that was general and not special in its operation. The resolution therefore had all the attributes of a by-law, and if it had been adopted in accordance with the requirements of the charter would have been, not merely an expression of the will of the members, but a law of the corporation. *Flint* v. *Pierce*, 99 Mass. 68 ; *State* v. *Overton*, 24 N. J. L. 441; *Brick-Church* v. *N. Y.*, 5 Cowen, 540 ; 1 *Thompson on Corp.* 939, and authorities there cited. It must be regarded therefore as an ineffectual effort on the part of the members to enact their will into a law of the body. Being void as a law, it can furnish no evidence whatever of the will of the members and cannot control or restrict the directors in the discharge of their duties.

*Judgment affirmed.*

(Decided January 4th, 1898).