## SECURITIES AND EXCHANGE COMMISSION v. TRANSAMERICA CORPORATION et al.

### Civil Action No. 861.

District Court, D. Delaware.
July 11, 1946.

Rehearing Denied Sept. 9, 1946.

328.

Edward H. Cashion, Counsel, and Walter G. Holden, Sp. Counsel, both of Philadelphia, Pa., Edward C. Jaegerman, of Washington, D. C., and Elwood L. Englander, and Robert Block, Attorneys, both of Philadelphia, Pa., for Securities and Exchange Commission.

Edwin D. Steel, Jr., of Morris, Steel, Rodney, Nichols & Arsht, all of Wilmington, Del., for defendant.

LEAHY, District Judge.

1. The inquiry applicable to the Gilbert proposals is whether they are a "proper subject for action by security holders" at an annual meeting. This inquiry must be answered not by federal but by Delaware law.[1]

I shall first consider the proposal that defendant send a report as to what occurred at all annual meetings to its stockholders. This resolution was not intended by Gilbert to be offered as a by-law amendment but as a straight resolution. Under Delaware law this resolution is not "a proper subject for action" by stockholders. Sec. 9 of the Delaware Corporation Law provides: "The business of every corporation

---

[1] Release of January 3, 1945, Securities Exchange Act of 1934, Release No. 3638; Holding Company Act of 1935, Release No. 5536; Investment Company Act of 1940, Release No. 735:
"Speaking generally, it is the purpose of Rule X–14A–7 to place stockholders in a position to bring before their fellow stockholders matters of concern to them as stockholders in such corporation; that is, *such matters* relating to the affairs of the company concerned *as are proper subjects for stockholders' action under the laws of the State under which it is organized.* It was not the intent of Rule X–14A–7 to permit stockholders to obtain the consensus of other stockholders with respect to matters which are of a general political, social or economic nature. Other forums exist for the presentation of such views." (Emphasis added.)

organized under the provisions of this Chapter shall be managed by a Board of Directors, except as hereinafter or in its Certificate of Incorporation otherwise provided * * *." [2] Sec. 5(8) of the Delaware Corporation Law provides that a certificate of incorporation may set forth "* * * any provision which the incorporators may choose to insert for the management of the business and for the conduct of the affairs of the corporation, and any provisions creating, defining, limiting and regulating the powers of the corporation, the directors and the stockholders, or any class of stockholders * * * provided, such provisions are not contrary to the laws of this State." [3] In accordance with the statutory power conferred by Sec. 5(8), Article XIII of the Certificate of Incorporation of Transamerica was adopted by the incorporators. This article reads: "All of the powers of this corporation in so far as the same may be lawfully vested by this Certificate of Incorporation in the Board of Directors, are hereby conferred upon the board of directors of this corporation." [4] Article XIII is a comprehensive grant of powers to the Board of Directors and, read in connection with Sec. 5(8) of the Delaware Corporation Law, makes clear that the directors are vested not only with the management of the business, but also with "the conduct of the affairs of the corporation."

■ Article XIII gives directors and not stockholders the right to determine whether a report of the annual meeting must be sent to stockholders, for the propriety of the expense and the issuance of such a report is clearly related to the conduct of the affairs of the corporation. It is both good law and good sense, based on business expediency, that such matters must be determined by the Board of Directors. This interpretation of the Delaware statutes and the certificate of

incorporation and by-laws of defendant follows the general view of the matter. People ex rel. Manice v. Powell, 201 N.Y. 194, 94 N.E. 634, 637; Manufacturers Exhibition Bldg. Co. v. Landay, 219 Ill. 168, 76 N.E. 146, 148; 5 Fletcher Cyc. Corporations § 2097. In one of the leading cases, Judge Lehman said: "* * * The directors are constituted managers of the corporate affairs. They determine the corporate policies, they elect the corporate officers. In the functioning of the corporate machinery the power of control of the holders of the majority stock is, as in such matters, exhausted with the election of the directors." [5] The only power which stockholders normally have to control the corporate machinery is exhausted when they elect corporate directors. The rule is not a harsh one because, if a sufficient number of stockholders are interested in a particular matter or policy which is opposed to that followed by management, they are at liberty to band together and elect a Board of Directors who will be sympathetic toward the particular policies which the stockholders espouse.

The particular resolution which Gilbert proposes, even if carried by a majority vote of the stockholders, would not be binding upon the officers and directors. In short, the resolution is not "a proper subject for action by the security holders" within the meaning of Rule X–14A–7; and, consequently, neither that rule nor Rule X–14A–2 requires defendant to include in its proxy material the matters with reference to the Gilbert proposal which asks for a resolution requiring management to send out a summation or report as to what has occurred at annual meetings to all stockholders.

■ 2. Gilbert's letter of January 2, 1946, shows he intended to propose a resolution to amend Sec. 47 [6] of the by-laws so as to eliminate the giving of notice when

---

2 Rev.Code of Delaware, 1935, § 2041.

3 Rev.Code of Delaware, 1935, § 2037(8).

4 Sec. 14 of the By-Laws provides:
"In addition to the powers and authorities by these by-laws expressly conferred upon them, the Board may exercise all such powers of the corporation and do all such lawful acts and things as are not by statute or by the certificate of incorporation or by these by-laws directed or re-

quired to be exercised or done by the stockholders * * *."

5 McQuade v. Stoneham, 263 N.Y. 323, 189 N.E. 234, 238.

6 By-law Sec. 47 provides: "These by-laws may be altered or amended by the affirmative vote of a majority of the stock issued and outstanding and entitled to vote thereat, at any regular or special meeting of stockholders if notice of the

stockholders desired to amend the by-laws. Sec. 47 provides by-laws may be amended either by directors or stockholders but to adopt a valid amendment the proposed amendment must be set forth in the notice of meeting. Such a by-law is valid. In re Tonopah United Water Co., 16 Del.Ch. 26, 139 A. 762, 765; In re Mississippi Valley Utilities Corporation, D.C.Del., 2 F.Supp. 995. See, too, State v. Offutt, 121 Neb. 76, 236 N.W. 174; In re Flushing Hospital & Dispensary, Sup., 27 N.Y.S.2d 207, affirmed 262 App.Div. 863, 29 N.Y.S.2d 151, 28 N.Y.S.2d 155; Klein v. Scranton Life Ins. Co., 139 Pa.Super. 369, 11 A.2d 770; Bushway Ice-Cream Co. v. Fred H. Bean Co., 284 Mass. 239, 187 N.E. 537; Mutual Fire Ins. Co. v. Farquhar, 86 Md. 668, 39 A. 527; cf. Fletcher, Corporations (Perm. Ed.) § 4179. The validity of this by-law is conceded.

The notice of defendant's annual meeting contained no reference to Gilbert's proposal to amend Sec. 47 of the by-laws. Therefore, defendant argues, his proposal could not be adopted at the meeting and consequently the proposed amendment was not a proper subject for action at the meeting. In answer to this, SEC points out that defendant is required to include in a notice of an annual meeting the stockholder's proposal to amend the by-law because if it were under no such duty, then Sec. 47, re-

quiring notice, is invalid, in that it would operate to deprive stockholders of their statutory right to amend by-laws in accordance with Sec. 12 of the Delaware Corporation Law.[7] The Delaware statute, Sec. 12, does give the right to stockholders to amend by-laws. Sec. 47 of defendant's by-laws recognizes this right by providing stockholders may repeal by-laws passed by directors. And this right, SEC argues, cannot be circumscribed by arbitrary procedural obstacles created by management, for the requirement that a notice of a proposed amendment should be contained in the notice of the annual meeting—as a condition precedent for its consideration at the meeting—was intended to protect stockholders and not to give management a device which they can arbitrarily utilize to prevent consideration or vote on a stockholder's proposal, simply because management does not choose to mention such proposals in the notice of meeting.

There is nothing in the General Corporation Law of Delaware or in the charter or by-laws of Transamerica Corporation which requires it to give stockholders notice of any by-law amendment which a shareholder desires to submit at an annual meeting. If the Board of Directors refuses to notice an amendment which a shareholder deems desirable, he must seek his remedy in other channels.[8]

proposed alteration or amendment be contained in the notice of the meeting, or by a resolution adopted by the affirmative vote of a majority of the whole Board at a regular or special meeting, provided that the amendments so adopted shall first have been proposed by a resolution passed by the vote of a majority of the whole Board at its last preceding meeting and that the notice calling the meeting at which said amendments are to be and are adopted shall specify by designated number, the section or sections of the by-laws involved, and embody a copy of the section or sections proposed to be added or deleted, or in case it is proposed to amend any section or sections, shall embody a copy of such section or sections in proposed amended form * * *."

[7] Sec. 12 of the Delaware Corporation Law:

"The original by-laws of the corporation may be adopted by the incorporators. Thereafter, the power to make, alter or repeal by-laws shall be in the stockholders,

but any corporation may, in the certificate of incorporation, confer that power upon the directors."

Art. X(a) of the Certificate of Incorporation also provides:

"In furtherance and not in limitation of the powers conferred by statute, the board of directors is expressly authorized:

"(a) To make and alter the by-laws of this corporation, without any action on the part of the stockholders; but the by-laws made by the directors and the powers so conferred may be altered or repealed by the stockholders."

[8] It is interesting to note, although concededly a technical argument, that Gilbert never formally requested Transamerica to make any reference to his proposed by-law amendments in the notice of the meeting (This is apparent from a reading of the Ponsford affidavit). It is clear, then, that Gilbert failed to utilize the machinery requisite to getting the matter before the stockholders. And it is also apparent that the particular machinery is reasonable.

There is nothing in the nature of things wicked in a by-law provision which prevents stockholders from amending the by-laws at an annual meeting in cases where the directors of the corporation see fit to omit notice of a by-law amendment which a stockholder desires, for neither the Delaware Corporation Law nor the charter nor the by-laws of Transamerica confers any plenary and unrestricted power upon stockholders to amend the by-laws at an annual meeting. Sec. 8 of the by-laws [9] affords the stockholder a fair and reasonable opportunity to amend by-laws at a special meeting called for that purpose and requires a corporation to call a special meeting, upon the request in writing, of stockholders of a majority of the stock of a corporation. Sec. 8 is a proper by-law under authority of Sec. 2(6)[10] of the Corporation Law.

The stockholders, then, are authorized to amend the by-laws of a corporation at any annual meeting if the directors, in the exercise of their discretion, determine to give notice that the question of amending the by-laws is one of the matters to come before the meeting. If the directors are recalcitrant, any stockholder who desires action may, by banding together with the majority of the stockholders, require the calling of a special meeting for the purpose of amending the by-laws.[11] I think that Sections 8 and 47 of the by-laws constitute merely a specification of the means by which the statutory, amendatory powers of the stockholders can be exercised and are reasonable limitations of that right and in no sense amount to a negation of an amendatory right itself.

This seems to me a very reasonable way to conduct the internal affairs of a modern corporation. If the rule were otherwise, any of the several hundred thousand stockholders, or all of them, might have suggestions as to by-law changes and the directors who, of necessity, are charged with the general management of the corporation would have to involve the corporation in great expense to print the great number of suggested by-law changes, with no defense against the requests of cranks. Moreover, it is doubtful whether such meetings could be concluded before the time for the succeeding annual meeting. However, if the majority of the stockholders in accordance with the usual democratic principle, desire to have their corporation managed in such a Pickwickian fashion they may, of course, do so under their power to amend the by-laws at a special meeting. But, it seems clear that, under the Delaware Corporation Law, stockholders also have the right to have their corporation managed

---

9 Sec. 8 of the By-Laws provides: "Special meetings of the stockholders, for any purpose, or purposes, unless otherwise prescribed by statute, may be called by the Chairman of the Board or the Vice-Chairman of the Board or the President or Secretary at the request in writing of a majority of the Board of Directors, or at the request in writing of stockholders owning a majority in amount of the entire capital stock of the corporation issued and outstanding, and entitled to vote. Such request shall state the purpose or purposes of the proposed meeting."

10 Sec. 2(6) of the Delaware Corporation Law provides:

"Every corporation created under the provisions of this Chapter shall have power * * *

"6. To make by-laws not inconsistent with the Constitution or laws of the United States or of this State, fixing and altering the number of its directors for the management of its property, the regulation and government of its affairs, and for the certification and transfer of its stock with penalties for the breach thereof not exceeding twenty dollars."

11 The defendant, subsequent to the receipt of certain material from Gilbert, acting through the directors, amended Section 47 of the by-laws by adding the provision whereby proposed by-law amendments would be in every case inserted in the notice of any annual meeting on the receipt of requests from 1% of the stockholders six weeks before the annual meeting, and further providing that a special meeting would be called to amend the by-laws on request of 1% of the stockholders, provided they advanced the costs of preparing and mailing the notices. This provision was not available to Gilbert in time for the April 25 meeting, but it is available in the future and is so obviously a reasonable limitation of the amendatory power of stockholders that no difference of opinion can arise in the future. Even if this provision had been available to Gilbert, he did not qualify under it for he did not have 1% of the stock.

and its affairs conducted in a more sensible fashion. I accordingly conclude that the Gilbert proposal to amend the by-law, as discussed, is not a proper suggestion for stockholders' action.

3. Section 14(a) of the Act makes it unlawful for any person to use the mails, etc., to solicit any proxy in respect of any security registered on any national exchange in contravention of the rules and regulations of the Securities and Exchange Commission. Regulations X–14A–2 and X–14A–7 were adopted pursuant to the statutory grant found in Sections 14(a) and 23(a). Under these regulations, where a security holder gives management reasonable notice of his intention to present at a meeting of stockholders a proposal which is a proper subject for action, the management must set forth the proposal in its proxy material and provide a means by which all the stockholders can specify, by ballot, their approval or rejection of such proposal. If management opposes the recommended proposal, it must, on the request of the stockholder, include in its soliciting material the name and address of the security holder making the proposal, together with a statement giving the reasons advanced by the stockholder in support of the proposal.

No cogent reason has been advanced why the proposal to have independent public auditors of the books of the corporation elected by stockholders (beginning with the annual meeting of 1947, and a representative of the auditing firm so chosen attend the annual meeting each year) is not a proper subject matter to come before the annual meeting, nonconstat, it could be brought forth for discussion and action at a special meeting. With respect to the annual meeting of defendant Transamerica, management by the exercise of procedural limitations had no right to omit this particular Gilbert proposal from the notice of the annual meeting to be sent to all stockholders. The selection of independent auditors is such a proper and common subject for action by stockholders that the mechanics of treatment of this type of proposal has been set forth in items 8 and 10 of schedule 14(a) of the Commission's proxy rules. Item 8, for example, reads:

"If action is to be taken with respect to the election of auditors, or if it is proposed that particular auditors shall be recommended for selection by any committee to select auditors for which votes pursuant to the proxy are to be cast—

"(1) Name the auditors.

"(2) Describe briefly any material relationship of such auditors and any associates of such auditors to the issuer and any affiliates of the issuer.

"(3) State, or describe briefly, (A) the name of each nominee for any committee to select auditors for which votes pursuant to the proxy are to be cast, (B) the office, if any, which such nominee holds with the issuer, (C) the approximate amount, as of the most recent practicable date, of each class of securities of the issuer of which such nominee is directly or indirectly the beneficial owner, and (D) any other relationship of such nominee, or any relationship of any associate of such nominee, to the issuer and any affiliates of the issuer which is of a material character. If the nominee is not the beneficial owner of any securities of the issuer, make a statement to that effect."

The SEC concluded that management's failure to notice and present to the stockholders the Gilbert proposal with respect to the selection of independent auditors was in violation of the proxy rules. That conclusion is adopted here.[12]

The Delaware Corporation Law, which admittedly controls, contains no specific statutory provision expressly denying to stockholders the right to vote or select independent auditors. And in this case, there is no limitation in the charter or by-laws restricting that right to directors rather than to stockholders. Furthermore, there is no provision in the Delaware Corporation Law from which the conclusion is inescapable that such a right must be exclusively exercised by the directors on the

---

[12] The Commission's "interpretation of the Act should control unless plainly erroneous." SEC v. Associated Gas & Electric Co., 2 Cir., 99 F.2d 795, 798; Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796.

theory that the stockholders have delegated every conceivable piece of business, with respect to the affairs of the corporation, to the directors. Here, the stockholders, as beneficial owners of the enterprise, may prefer to consider the selection of independent auditors to review what is no more than the trust relationship which exists between the directors and stockholders. Truly it would be an odd legal relationship whereby trustee has conclusive discretion over the method and person who shall review the trustee's accounts. The matter of independent auditors is obviously a proper subject matter to come before a stockholders' annual meeting or any special meeting. It is such a subject matter that it had the interest of the Commission when it promulgated its regulations and rules under the Securities Exchange Act of 1934, as shown by item 8 of schedule 14(a).

Where a solicitation is in violation of the Act, the enforcement court has power under Section 21(f) to enforce compliance. Defendant's argument that the court is without jurisdiction to grant relief at this time because the illegal solicitation is a fait accompli is without merit. SEC v. Fiscal Fund, D.C.Del., 48 F.Supp. 712; SEC v. Okin, D.C., 58 F.Supp. 20; SEC v. O'Hara, D.C., 28 F.Supp. 523; SEC v. Aldred Investment Trust, D.C., 58 F.Supp. 724.

There is no special reason why the vote on independent auditors should be required to assume the form of a new by-law. Such a vote is simply a mandate from the stockholders to the directors which may be carried into execution by following its terms. In order to protect the stockholders, defendant should be required to comply with the Securities Exchange Act of 1934 and all apposite rules and regulations of the SEC promulgated thereunder; and in this instance, an order should be prepared directing defendant to notice and set forth the Gilbert proposal as to independent auditors for a vote of stockholders at the adjourned meeting of the company. However, the proposal for independent public auditors is not to go into effect until 1947 in any event. It would appear that if provision for such independent auditors were made at the 1947 annual meeting, the meeting could then proceed for the election of auditors. But, the particular form of decree to be entered shall be left for further discussion with counsel.

### On Petition for Reargument.

Defendants seek reargument on two grounds: (1) That the court has erroneously assumed that Gilbert's proposal that independent public auditors should be elected by the stockholders at the annual meeting, beginning in 1947, and that a representative of such auditing firm so chosen attend the annual meeting each year, was intended to be accomplished by the adoption of a resolution by the stockholders, whereas both plaintiff and defendants agree in their interpretation that such proposal actually contemplated an amendment to the corporate by-laws; and (2) Rules X–14A–7 and X–14A–2 were inapplicable to defendants because defendants did not intend that the Gilbert proposal should be acted upon pursuant to the proxies solicited by defendants. These grounds have no merit.

I still think that independent auditors are of such fundamental importance that their selection should be decided by the stockholders and I think this is what Gilbert had in mind. He says nothing about amending the by-laws for the purpose stated.

Some courts have held, for example, that a mortgage of the entire corporate assets is so vital to the stockholders that approval by stockholders is required even in the absence of specific statutory provisions. The matter here is likewise of comparable significance. The sentence in the opinion which, I suspect, gives defendants difficulty is the one which states: "The matter of independent auditors is obviously a proper subject matter to come before a stockholders' annual meeting or any special meeting." That sentence does not mean that any subject which is proper in the colloquial sense must be noticed for the annual meeting. If that were so, incalculable matters could be suggested and would probably be proper in the colloquial sense. This would create an intolerable situation and it would be difficult to conclude a stockholders' meeting.

The noted sentence was not intended to use proper subject matter in this sense. Hence, for defendants to correctly interpret the opinion, I think the quoted sentence should be changed to read thusly: "The matter of independent auditors is therefore of such fundamental importance that it should be considered and passed upon by stockholders themselves at a meeting and is not such a matter which it may be said the stockholders have already delegated to others."

The arguments urged by defendants as to the inapplicability of Rules X–14A–7 and X–14A–2 have been considered, but I think they are without merit.

Reargument denied.