Nancy Corinne DYER and J. Raymond Dyer, Petitioners,

v.

SECURITIES AND EXCHANGE COMMISSION, Respondent,

Union Electric Company, Intervenor-Respondent.

No. 16205.

United States Court of Appeals Eighth Circuit.

April 14, 1961.

Rehearing Denied May 29, 1961.

J. Raymond Dyer, St. Louis, Mo., for petitioners.

Arthur Blasberg, Jr., Atty., Securities and Exchange Commission, Washington, D. C., for respondent.

Thomas G. Meeker, Gen. Counsel, Solomon Freedman, Asst. Director, Aaron Levy, Asst. Chief Counsel, Div. of Corporate Regulation, Mahlon M. Frankhauser, Atty., Securities and Exchange Commission, Washington, D. C., were with Arthur Blasberg, Jr., Washington, D. C., on the brief.

Robert J. Keefe, St. Louis, Mo., for intervenor-respondent, Union Electric Co.

Wm. H. Ferrell, Keefe, Schlafly, Griesedieck & Ferrell, St. Louis, Mo., were with Mr. Keefe on the brief.

Before JOHNSEN, Chief Judge, and VAN OOSTERHOUT and BLACKMUN, Circuit Judges.

JOHNSEN, Chief Judge.

The attack of petitioners on the Security and Exchange Commission's order of authorization for the solicitation of proxies by management of Union Electric Co. as to the corporation's 1957 annual meeting was before us in Dyer v. Securities and Exchange Commission, 8 Cir., 251 F.2d 512, and 287 F.2d 773.

Their attack on the proxy-solicitation order of the Commission as to the 1958 annual meeting was before us in Dyer v. Securities and Exchange Commission, 8 Cir., 266 F.2d 33.

There is now before us, under 15 U.S.C.A. § 79x(a), the attack of petitioners on the order made by the Commission in relation to the meeting of 1959. As in the two preceding cases, it is insisted that everything the Commission had authorized or directed "should be set aside in toto as being unfounded in law and in fact."

When management made filing of its declaration of proxy material for the 1959 meeting, petitioners, as they had done in the previous years, poured in a torrent of objections against it. Thirty challenges were made to the declaration. Once again, the Commission exercised its discretion to hold a hearing and allowed petitioners to participate therein.

·What petitioners wanted principally to accomplish was to force management to include in its proxy material 11 resolutions, by-law amendments and amendments to articles of incorporation framed by them. One of the proposals management voluntarily agreed to allow to be so included, although it was opposed to the resolution itself. The other 10 proposals the Commission held that management was entitled to exclude from its proxy material.

Four of the excluded proposals have been the subject of decision by us against petitioners in the 1958 situation, 266 F.2d at pages 42–44. Three others had been the subject of a submission, vote and defeat at the 1957 meeting or the 1958 meeting or both. These the Commission held fell within its Rule 14A–8(c) (4) (i) and (ii), 17 CFR § 240.14a–8(c) (4) (i) and (ii), which authorizes management to refuse to include, for the next succeeding three years, any proposal which has been submitted at a meeting and has received less than 3% of the votes cast on it, or one which has been submitted a second time and has received less than 6% of the votes at that meeting.

Petitioners contend that the Commission was not at liberty in arriving at its 1959 order to accord any recognition or effect to what it had done in its 1957 and 1958 orders, or what the voting results had been at the 1957 and 1958 meetings as to any of the proposals which they were undertaking to renew. This, they assert, is so, because the Commission's 1957 and 1958 orders were then still pending on judicial review and thus the validity of the orders had not yet been finally settled.

The argument made is that the according of any recognition or effect to

either of such orders in relation to the 1959 situation would violate the provision of 15 U.S.C.A. § 79x(a) that, when proceedings to review an order of the Commission have been perfected to a Court of Appeals, "such court have have exclusive jurisdiction to affirm, modify, or set aside such order, in whole or in part". The effect of this provision, however, is merely to insure that any question as to the validity or propriety of such an order is in such a situation confined to the jurisdiction of the reviewing court exclusively, by depriving the Commission during that period of the right to engage in any changing of the order, and by precluding other courts from making any determination of the validity or propriety of the order during that time through some collateral reach.

Were the provision to be construed as leaving the Commission's order without right to administrative operation and effect from the circumstance of the institution of a proceeding for review, it would be in conflict with and would render nugatory the provision of subsection (b) of 15 U.S.C.A. § 79x, that "The commencement of proceedings under subsection (a) of this section shall not, unless specifically ordered by the court, operate as a stay of the Commission's order".

■ We had specifically refused to grant a stay of either the 1957 order or the 1958 order of the Commission, and accordingly, notwithstanding the pendency of proceedings for their review, each of the orders was, under § 79x(b), entitled to have administrative operation and effect during the disposition of those proceedings. The Commission thus clearly could accord them such a relationship and significance, and would not be guilty of any administrative abuse in so doing, for purposes of its order as to the 1959 situation.

True, if the 1957 and 1958 orders had thereafter been reversed, that obliterating result might then become a factor in the judicial action necessary to be taken as to the consequences of such parts of the 1959 order as had been predicated on

the validity allowed by § 79x(b) to be accorded to it.

But this question is not of concern here. The 1957 and 1958 orders were both upheld by us, so that all that is capable of being involved in this proceeding is the naked question, answered above, whether the according of operativeness and effect by the Commission to those orders for purposes of its 1959 order, when review proceedings were pending as to them but they were unstayed, was in itself invalid or improper administrative action.

As a matter of fact, our opinion in 266 F.2d at pages 41 and 42 undertook to put this question at rest and ought to have caused petitioners not to make renewal of it here. But from the arguments which they have made, petitioners seem to be unable to comprehend how such a holding could have been arrived at, and thus enlargement of the expression of our previous opinion has been accommodatingly engaged in for their benefit. Possibly it further may assist to understanding and acceptance by them to add the comment that, in thus permitting an unstayed order of the Commission to have administrative operation and effect, § 79x(b) is of no different legal nature than a statute which allows an unstayed judicial decree or an unsuperseded judgment to be enforced, while an appeal therefrom is pending.

Again in the present situation, as in the two cases which have preceded, we do not feel called upon or warranted to engage in a discussion of each of petitioners' numerous contentions. The three successive review proceedings which have been before us do not leave us with much hope that petitioners will come to realize, or at least acceptingly recognize, the scope of the regulatory function, judgment and discretion which has been entrusted to the Commission, under the general statutory language "as the Commission deems necessary or appropriate". In all of petitioners' review proceedings, we have particularly sought to make emphasis of the significance of this grant of authority and discretion in

its relation to a matter of privilege, not an inherent stock-ownership right, such as the according of inclusion to some proposal by a stockholder in management's proxy material—which privilege has its source and measure not in statutory specification but in delegated judgment as to regulatory need and appropriateness.

We shall, however, here, as in the previous situations, deal with a few of petitioners' contentions in order once more to try to demonstrate that the Commission's administrative action has not been arbitrary, unfair or without rational basis, as a question of regulatory judgment on necessity or appropriateness. Presumably, from the lack of reported decisions, the denials of attempts by stockholders in other public holding company situations to have inclusions made in management's proxy material must generally have had their end in an acceptance of the regulatory judgment which the Commission had exercised in the particular situation. No part of the Commission's judgment has, however, been able in three years to satisfy petitioners.

█ One of the proposals (Proposal No. 1), which petitioners sought to have included in management's proxy material was an amendment to the articles of incorporation for adoption at the meeting, making provision for preemptive subscription rights to common stockholders. Union Electric was a Missouri corporation; and the following legislative prescription was contained in Mo.R.S.1949 § 351.090, V.A.M.S. § 351.090, for amending the charters of such corporations:

"Amendments to the articles of incorporation shall be made in the following manner:

(1) The board of directors shall adopt a resolution setting forth the proposed amendment and directing that it be submitted to a vote at a meeting of shareholders, which may be either an annual or a special meeting;  *  *  * "

One of the purposes which the statute would serve would be to prevent impetuous, ill-considered and uncoordinated amending of corporate charters, since the directors apparently had the responsibility of proper formulation as to any such proposal, whether it was one suggested by the Board itself or one required to be so dealt with from properly requested action of a stockholder majority.

█ The Commission held: "In view of this statutory provision we agree that the proposal is not in proper form for submission for action of stockholders and may be omitted". Relatedly it should be added that petitioners' Proposal No. 11, which management agreed to include in its proxy material, similarly dealt with the matter of preemptive rights and undertook to do so in a manner conforming to the intent of the statute. This proposal was in the form of a resolution for adoption by the stockholders, calling upon the board of directors to adopt a resolution of amendment and direct that it be submitted to a vote at the next annual meeting, providing that "when new shares of common stock are issued each holder of original common stock shares then outstanding shall be entitled to subscribe to the new issue in preference to nonholders and on equal terms with other holders of the original common stock shares, in the proportion that the number of his original shares bears to the total outstanding number of original shares".

The Commission took note of this aspect of the situation in relation to its holding as to Proposal No. 1, saying: "We note that Dyer has submitted, and management proposes to include in its solicitation material, a related proposal in the form of a resolution calling on the board of directors to adopt and submit to the stockholders an amendment to the articles to restore preemptive rights as in effect in January 1955".

Plainly, on these considerations, it must be held that, in refusing to compel management to include Proposal No. 1 in its proxy material, the Commission did not act arbitrarily or without rational basis. Petitioners contend, however, that the Commission's ruling must be viewed as legally being in conflict with the hold-

ing in Securities and Exchange Commission v. Transamerica Corporation, 3 Cir., 163 F.2d 511.

That case, in its relevance here, was one where the Commission had ordered the inclusion by management of a proposal by a stockholder for amendment at the annual meeting of a corporate by-law (not articles of incorporation). The proposal sought to effect the elimination of an existing by-law provision, which allowed changes to be made in the by-laws by action of stockholders, only if the proposal of change had been included in the notice of meeting. Management had been using the provision to keep such stockholders' changes from being made, by simply refusing to make inclusion of the proposal in the notice. Management further refused to comply with the Commission's order for inclusion of the proposed amendment in the immediate meeting notice, and the Commission thereupon sought an injunction to prevent the corporation and its officers from soliciting or using any proxies for purposes of the meeting.

The Court of Appeals for the Third Circuit, on an appeal from the judgment of the District Court in which the injunction was sought, held that the Commission had duly acted within its powers in making the order of inclusion; that the existing by-law provision was not in harmony with the Delaware statute and the corporation's charter, insofar as it was capable of being used by the board of directors to prevent proper proposals for by-law changes from coming before the stockholders' meeting by the board simply refusing to include them in the notice of meeting; that the General Corporation Law of Delaware provided that "the power to make, alter or repeal by-laws shall be in the stockholders, but any corporation may, in the certificate of incorporation, confer that power upon the directors", 8 Del.C. § 109; that Transamerica's charter did not purport to confer any exclusive power upon the board of directors to make, alter or repeal by-laws, but to the contrary contained this provision [163 F.2d 517]:

"In furtherance and not in limitation of the powers conferred by statute, the board of directors is expressly authorized: (a) To make and alter the by-laws of this corporation, without any action on the part of the stockholders; but the by-laws made by the directors and the power so conferred may be altered or repealed by the stockholders"; and that thus the proposal sought to be submitted was one that was a proper subject for stockholder action, as being (in the language of the opinion) a matter "in respect to which stockholders have the right to act under the General Corporation Law of Delaware", and as being a right which had not been purported to be surrendered but to the contrary was expressly preserved to them in the corporation's charter.

It seems almost fanciful for the argument to be made, as is in effect being here done, that the upholding of the Commission's judgment on necessity and appropriateness in the Transamerica situation, as the Court properly did, must be regarded as leaving the Commission without rational basis to view the attempt of petitioners to ignore the Missouri statute, as not being regulatively appropriate in the present situation, and indeed as also being in no way necessary, because of the opportunity afforded them to have the desired amendment in substance dealt with on the basis of the Missouri statute from management's voluntary inclusion of their Proposal No. 11 in its proxy material.

Proposal No. 10 of petitioner was a resolution containing a declaration that "it is the consensus of the holders of a majority of the stock voting on this proposal" that the existing directors (who were candidates for re-election) had, by reason of certain official actions on their part, alleged by petitioners to be improper, "forfeited the confidence of the stockholders", and that "said members of said present board of directors are hereby censured for their said failures to act responsibly, and, in accordance with law, are hereby declared to be disqualified for re-election as directors of this company,

whether at the 1959 annual meeting of stockholders, or ever".

Rule 14A–8 of the Commission, 17 CFR § 240.14a–8, which is the source of the privilege to stockholders of making request for inclusion of proposals by them in management's proxy material, contains an express provision that "This section shall not apply, however, to elections to office".

It will be noted that petitioners' resolution was not one of attempt by by-law provision or otherwise to lay down general qualification standards for the office of director, but was one naming all the existing directors personally and seeking to have each of them censured and declared to be disqualified for re-election, at the meeting where they were candidates for such office. Here again, we do not see how it could judicially be said that the Commission acted without rational basis in regarding this as being, within the meaning of Rule 14A–8, supra, a campaign effort against the election of these directors to office. Indeed, this evaluative reality stands out in all of the proceedings which petitioners have brought before us.

The Commission stated: "Dyer contends that he is not requesting stockholders to refrain from voting for the re-election of Union's directors but is simply requesting that they declare the directors disqualified for office. We think such a distinction cannot validly be drawn, since a stockholder could not logically vote for the Dyer proposal and at the same time vote for re-election of the present directors. The submission of this proposal of necessity would constitute an attempt to dissuade stockholders from voting in favor of management's nominees. Accordingly, we find that the proposal involves elections to office, that Rule 14A–8 therefore does not apply to the proposal and that management may omit it from its proxy material".

Without further prolonging this opinion, we add the assurance, as we have done in each of petitioners' preceding review proceedings, that we have examined and considered all of their numerous contentions and find them, equally with those which we have discussed, to present no ground for us to say that the Commission has acted without rational basis or without fair play in its regulatory judgment on the question of necessity and appropriateness as to the matters involved.

Affirmed.