Nancy Corinne **DYER** and J. **Raymond** Dyer, Petitioners,

v.

**SECURITIES AND EXCHANGE COMMISSION, Respondent.**

**No. 16451.**

United States Court of Appeals Eighth Circuit.

May 10, 1961.

Rehearing Denied June 26, 1961.

J. Raymond Dyer, St. Louis, Mo., for petitioners.

Arthur Blasberg, Jr., Attorney, Securities and Exchange Commission, Washington, D. C., for respondent.

Before JOHNSEN, Chief Judge, and MATTHES, Circuit Judge.

JOHNSEN, Chief Judge.

The Securities Exchange Act of 1934 made it unlawful for anyone to solicit proxies "in respect of any security (other than an exempted security) registered on any national securities exchange in contravention of such rules and regula-

tions as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C.A. § 78n(a).

Similarly, the Public Utility Holding Company Act of 1935 made it unlawful to solicit proxies as to any registered holding company "in contravention of such rules and regulations or orders as the Commission deems necessary or appropriate in the public interest or for the protection of investors or consumers". 15 U.S.C.A. § 79l(e).

To effectuate § 78n(a), the Commission promulgated its Regulation 14, consisting of Rules 14a–1 to 14a–11, 17 CFR §§ 240.14a–1 to 240.14a–11. This regulation requires a filing to be made with the Commission of the proxy statement, form of proxy and other material intended to be used for a solicitation and contemplates an administrative processing thereof, without formal hearing, on such examination, correspondence, conferences, comments, suggestions, or other incidents as the Commission or its Staff may choose to engage in.

There is a provision in the regulation for a privilege in stockholders to have proposals and statements in support thereof included in management's proxy material, but matters relating to elections to office are excepted from the general privilege. Conditions also are set out under which management may refuse to include proposals. But where "management asserts that a proposal and any statement in support thereof may properly be omitted from the proxy statement and form of proxy, it shall file with the Commission * * * a copy of the proposal and any statement in support thereof as received from the security holder, together with a statement of the reasons why the management deems such omission to be proper in the particular case, and, where such reasons are based on matters of law, a supporting opinion of counsel". Management further must forward a copy of such statement and counsel opinion to the security holder, with notice of its intention to omit the proposal.

If the Commission regards the omitting of some proposal as not being warranted under its regulations and so advises management or makes suggestion in respect thereto which is unheeded, it may sue for an injunction in a federal district court to prevent management from engaging in the proposed solicitation in violation of the regulations, or from voting the proxies so obtained. See e. g. Securities and Exchange Commission v. May, 2 Cir., 229 F.2d 123, 55 A.L.R.2d 1123; Securities and Exchange Commission v. Transamerica Corporation, 3 Cir., 163 F.2d 511.

For purposes of effectuating § 79l(e), the Commission promulgated its Rule 61, 17 CFR § 250.61, providing in relevant substance that the solicitation of proxies as to a registered holding company shall be subject to the provisions of its Regulation 14, supra, under the Securities Exchange Act. It further promulgated its Rule 62, 17 CFR § 250.62, providing that no solicitation of any authorization in connection with any reorganization subject to the approval of the Commission or in connection with any other transaction which is or will be the subject of an application or declaration filed with the Commission shall be made except pursuant to a declaration with respect to such solicitation which is allowed to become effective in the manner prescribed by the Rule.

The language, "in connection with any other transaction which is * * * the subject of an application or declaration", manifestly covers all matters which the statute expressly mandates must be made the subject of a declaration—as, for example, under 15 U.S.C.A. § 79f(a), the issuance or sale by the corporation of some of its capital stock, or the exercising of any privilege or right to alter priorities, preferences, voting power, or other rights of an outstanding security.

The solicitation of proxies, however, as to the ordinary incidents of a stockholders' meeting would not on this basis come within the operation of Rule 62, since the statute does not impose the re-

quirement of a declaration or application or make other prescription as to this field, but leaves it wholly to the regulatory authority of the Commission. And under Rule 61, which the Commission has promulgated for purposes of proxy solicitations generally which are within its jurisdiction, there is merely a requirement, as indicated above, for an informal filing of the proposed proxy material and any matter relating to management's omission therefrom of proposals submitted by stockholders, with indication to be made of the date when the use of the proxy statement and proxy form is intended to become effective.

The Commission has, however, in practice, exercised its discretion to remove a proxy solicitation from the operation of Rule 61 and to subject it by special order to the application of Rule 62, when it has deemed it desirable to afford the opportunity for a hearing in some particular situation.

Thus, in 1957, after petitioners here (father and daughter, holders of 250 shares in the 11¼ million shares of voting stock outstanding in Union Electric Company) had become stockholders and sought to make objections and submit proposals as to management's proxy material for the stockholders' annual meeting of that year, the Commission saw fit to enter an order subjecting the situation to the application of Rule 62 and the according of a hearing thereon. On a similar array of objections and proposals being made by petitioners to management's proxy material for the stockholders' meeting of 1958, the Commission entered another such special order for that year. Petitioners came back with a third barrage of objections and proposals to management's proxy material for the year 1959, and the Commission once more exercised its discretion to deal with the situation under Rule 62 and to accord an opportunity for hearing.

In all of these situations, petitioners just as tenaciously sought review before us of the Commission's holdings against them, and we have successively made affirmances of each of the orders which the

Commission had entered. See Dyer v. Securities and Exchange Commission, No. 15,765, 8 Cir., 287 F.2d 773; Dyer v. Securities and Exchange Commission, No. 15,989, 8 Cir., 266 F.2d 33; Dyer v. Securities and Exchange Commission, No. 16,205, 8 Cir., 289 F.2d 242.

Petitioners have also in this short period challenged before us another order of the Commission, which permitted Union Electric to make offering and sale to its common stockholders of some additional shares of its unissued stock. This order too we found to be without basis for the attack which petitioners launched against it. See Dyer v. Securities and Exchange Commission, No. 16,347, 8 Cir., 290 F.2d 534.

There is now before us an attack upon the Commission's action as to the proxy material of management and the proposals submitted by petitioners in relation to the annual meeting of 1960. Management, in regular course, as it had done in the past, made filing of this material in accordance with Rule 61. After three successive years of the same kind of fruitless and impositional experience with petitioners from having tolerantly granted them hearings under Rule 62, the Commission saw fit to deal with management's 1960 proxy material and petitioners' submitted proposals on the basis of Rule 61, with mere administrative processing, in accordance with the Commission's procedure and practice in proxy situations generally.

Communication was engaged in with both petitioners and management in respect to petitioners' proposals. Two of the ten proposals made by petitioners were included by management in its proxy statement and form at the Commission's suggestion. The other 8 were omitted from the proxy, but their general nature was set out by management in the notice of the meeting and it was indicated that they would be subject to being acted upon, should petitioners see fit to bring them before the meeting.

Petitioners, however, did not want the matter so processed, and they made request of the Commission that it handle

the situation under Rule 62 and again hold a hearing on all their proposals. The Commission advised petitioners that it would not grant this request, and, subsequent to the administrative processing in which it engaged, management made solicitation on the basis of its proxy statement and form, as amended by an adoption of the Commission's suggestions.

The situation has been brought here by a petition for review under 15 U.S.C.A. § 79x(a). The Commission has moved to dismiss the proceeding, on the ground that whether it chose to deal with the situation under Rule 61 or Rule 62 was a matter for its absolute discretion, which could not be judicially reviewed. It also contends that since the processing under Rule 61 does not involve any formal orders on its part but simply the engaging in such comments, suggestions, or other informal indications as it may choose, which are not made express conditions to a solicitation, as can be done under Rule 62, there is nothing to which a petition for review could be filed. Section 79x(a) grants a right of review of Commission action only as to "an order issued by the Commission".

Petitioners argue that, when the Commission refused their request for a hearing and advised them to that effect, this was in substance and effect an order of denial of hearing made by the Commission, whose validity or propriety in the circumstances would be subject to being tested by a petition for review.

██ But even if the Commission's refusal to grant a hearing be regarded as a denial order, this would not open up the situation to all of the contentions here which the petition for review seeks to raise. Thus, there is no room to argue that such a denial of hearing would constitute a deprivation of due process in the situation. Our previous opinions, both in Dyer v. Securities and Exchange Commission, No. 15,765, 287 F.2d 773, and Dyer v. Securities and Exchange Commission, No. 15,989, 266 F.2d 33, have emphasized that "what [petitioners] were seeking to obtain from the Commission by their demands to have inclusions made in management's proxy materials, was * * * the according of a privilege to them under the Commission's regulatory powers and not the enforcing of some legal right existing in their stock ownership", and that, "since privilege not legal right was involved, it was not a situation in which * * * [it] could be argued that * * * hearing was necessary as a matter of due process". [287 F.2d 779].

The most that there could be a right to have examined would be simply whether the Commission abused its discretion in refusing to hold a hearing. As noted, the Commission takes the position that it had an absolute discretion, not merely a legal one, in respect to whether it would hold a hearing or not.

The statutory language, "as the Commission deems necessary or appropriate", has been characterized by us as being "legally of the broadest content in its grant of regulatory and administrative power", Dyer v. Securities and Exchange Commission, No. 15,765, 287 F.2d 773, 779, and as being entitled to have full sweep, especially "in its relation to a * * * privilege, not an inherent stockownership right, such as the according of inclusion to some proposal by a stockholder in management's proxy material— which * * * has its * * * measure not in statutory specification but in delegated judgment as to regulatory need and appropriateness". Dyer v. Securities and Exchange Commission, No. 16,-205, 289 F.2d 242, 245.

██ In making provision for such a privilege of inclusion of stockholders' proposals, the Commission was acting within the spirit of the statute but not on the basis of any legislative command imposed upon it. It therefore had the right to make the privilege subject to such terms of availability and mode and extent of enjoyment as it should see fit to impose. The only bounds would be those of traditional legal and administrative concepts, that there could not exist unreasonableness, discriminatoriness, or

want of fundamental fair play in relation to what it did.

With mere privilege and not right being involved, the Commission could make the field subject, for general purposes, to purely administrative handling and processing, without any quasi-judicial aspect. Thus, it would not for purposes of the privilege be required to accord a stockholder a formal hearing.

■ Petitioners argue that this concept is violative of the provision of 15 U.S.C.A. § 79t(c), that "Orders of the Commission under this chapter shall be issued only after opportunity for hearing". That provision, however, cannot be regarded as having application to purely administrative actions, which are without any quasi-judicial aspect either inherently or by legislative prescription. For example, an order of the Commission directing that management's proxy material and proposals submitted by a stockholder should in a particular situation be made the subject of a declaration under Rule 62, instead of simply being processed under Rule 61, could hardly be contended to require an opportunity for hearing under § 79t(c) before the order would be entitled to be made.

■ We conclude our disposition of petitioners' contention that Rule 61 should be held to be invalid in its application to the Public Utility Holding Company Act because of the provision of § 79t(c), by a repetition of our expression in one of petitioners' previous cases: "Since privilege not legal right was involved, it was not a situation in which the statute could be said to have made an absolute requirement for a hearing, nor could it be argued that it was one in which hearing was necessary as a matter of due process". Dyer v. Securities and Exchange Commission, No. 15,-765, 287 F.2d 773, 779.

Hence, as indicated above, we think the Commission validly could limit the administration of the proxy-inclusion privilege to the process provided for in Rule 61. Had its regulations so done, there could be no possible basis for a complaint, such as petitioners make here, that they were improperly denied a hearing. But the regulations did not make such an absolute circumscription as to the administration of the privilege. They provided a door for the discretionary granting or requiring of a hearing by the Commission, through a use of the provisions of Rule 62 instead of Rule 61 as to a particular situation.

Two procedural channels for processing proposals submitted by stockholders thus were constituted by the regulations. Recognition was thereby made that there could be situations in which the Commission would feel that a hearing was needed, and the regulations were framed to make clear the Commission's right to exercise this discretionary choice.

In these circumstances, there could be basis to contend that the way had impliedly been left open for a request to be made of the Commission to exercise its discretion to process a situation under Rule 62 so as to afford the opportunity for a hearing, and that the Commission could not in that event engage in an arbitrary or discriminatory exercise of that discretion but had to do so responsibly.

We said on this aspect in Dyer v. Securities and Exchange Commission, No. 15,765, 287 F.2d 773, 780: "Had the Commission refused to hold a hearing, it would have had to be demonstrated that the situation was one where, from its nature or circumstances, it was an abuse of discretion for the Commission not to have held a hearing, in order properly [to be able] to arrive at the facts or soundly to be able to exercise judgment on necessity or appropriateness as to the privilege".

Ordinarily, the requirements of the regulations as to the statement entitled to be made in support of a submitted proposal and the statement required to be made by management in its opposition thereto, read in conjunction with the proposal itself, would enable the Commission to make responsible exercise of its power of judgment and discretion on necessity and appropriateness in relation to the particular privilege being sought.

Only in some extreme or special situation could there at all be any basis to contend that, within the power of discretion which it had provided itself, the Commission should have held a hearing in order to enable it to engage in responsible judgment, and that its refusal to hold one therefore was an abuse of such discretion.

In this connection, however, it should be borne in mind that, as indicated above, such duty as the Commission could have to hold a hearing by virtue of the discretion which it had chosen to vest in itself, would not be a matter of procedural obligation owed to the proposing stockholder but a matter of the proper exercise of administrative responsibility by it in relation to what it had expressly or impliedly imposed upon itself by its regulations.

Here, however, on the face of petitioners' proposals and the statements relating thereto, as contained in the petition for review, and in their setting of the previous cases and the Commission's rulings therein, we are unable to see any basis whatever on which it could be contended that an abuse of discretion was capable of existing in the Commission's refusal to hold a hearing.

There could be no need to grant a hearing on a proposal which was in substance simply a renewal of a matter on which the Commission had passed in previous years.

There could be no occasion to grant a hearing on petitioners' attempt to convert the stockholders' meeting into a judicial forum to have a resolution of purported declaratory judgment adopted, on an accusation that the directors had made illegal stock profits, that the directors were "required to pay over to the company all the profit they derived." If there had been illegal profits, 15 U.S.C.A. § 79q(b) contained provision for the remedy: "Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the company entitled thereto or by the owner of any security of such company in the name and in the behalf of such company * * *."

The directors would be entitled to their day in court on any such charges made under § 79q(b), and the Commission could properly deny the privilege of using management's proxy material to solicit votes for such an incompetent legal declaration. Petitioner J. Raymond Dyer is a lawyer, so that he could not be in ignorance of the legal irrelevance, and impropriety of what he was seeking to have done.

Nor could the Commission be asked to hold a hearing on such absurd and baseless proposals as that the stockholders who subscribed for the stock involved in Dyer v. Securities and Exchange Commission, No. 16,347, 290 F.2d 534, had been overcharged and should have a refund made to them of 10¢ per share; that the stock involved in that case which had been sold to employees of the company should be recalled and invalidated by the directors; and that the directors should be required to reimburse the company for all the dividends paid on such employees' stock.

No more would the Commission be obliged to hold a hearing on such proposals and statements as that the directors "are hereby censured for malfeasance in office"; that they "should not only be censured they should be expelled", etc. We have previously upheld the Commission's exclusion of such proposals and statements from management's proxy material as representing campaign material on the part of petitioners against such directors' reelection to office and therefore not being within the privilege of Rule 14A–8, 17 CFR § 240.14a–8, under the express provision that "This section shall not apply, however, to elections to office". Dyer v. Securities and Exchange Commission, No. 16,205, 289 F.2d 242, 247.

On the face of the petition for review as related to the Commission's holdings in the previous cases on which we have passed, there plainly was nothing that could responsibly call for the Commission to grant a hearing as a matter of

being able to arrive at salient facts or being able to exercise rational judgment on necessity or appropriateness in the immediate situation. We might again remind of our closing language in Dyer v. Securities and Exchange Commission, No. 15,765, 287 F.2d 773, 783, "that the proxy inclusion-and-expression privilege is an element of regulation and not of license in corporate democracy, and that, whether in general or particular situation, its measure or scope lies in the legislative language 'as the Commission deems necessary or appropriate', unless the Commission acts without rational basis or without fair play".

The Commission's refusal to grant a hearing is here entitled to summary affirmance.